Good morning, Your Honors, and may it please the Court, I'm Steven Ruckman, and with Jasmine Sharma, I represent the appellant, Smart Energy. This is a case about an excessive punitive fine that was imposed based on a completely new statutory interpretation. Based on just 34 complaints over 16 months, a state administrative agency imposed a record-breaking $16 million penalty on our client for conduct that the agency's own personnel repeatedly said was lawful through a process that offers no jury trial right and now claims that no federal court can say anything about it. The penalty at issue is nearly 30 times larger than any fine the Commission has ever collected in its history, and despite being described as a refund order, it includes a mandatory $6.5 million floor, regardless of how many customers actually claim a refund, with the remainder either directed to state energy assistance funds that are not related to Smart Energy or returned to the state collection agency. This is not a purely remedial measure, it's remedial and penal and punitive, and therefore the Eighth Amendment requires proportionality review. Okay, let's start with the fuel fund. Why isn't that, at minimum, not completely forfeited and probably not invited to err? I don't understand how you can propose this and then turn around and argue that means your constitutional rights were violated. You all proposed this. Well, so there's two things to say about that, Your Honor. First is that when we proposed it, it was under duress at a time in which we were trying to seek resolution in this matter. After learning about the potential circumstances. Sure, and argue it violates due process, which you haven't argued. Well, we think that a fine in this case is excessive, and as you all know, there's no reason to argue that. I just don't understand how you can urge that they do something and then they do it and then you turn around and say that's a major part of our argument about why our constitutional rights were violated. Well, actually, I think the larger part of our argument about why our rights were violated is the fact that there is a $6.1 million floor here that must be paid out. But you rely on the fuel fund, and I'm asking you, why have you not absolutely given up any ability to rely on the fuel fund given that you proposed it? We understand that we proposed it, Your Honor, but we proposed it at a time in which we felt like we were out of options and following precedent of the commission. Lots of litigants have hard choices to make. Say, criminal defendants constantly have really hard choices to make. Absolutely. We understand, Your Honor. And we think, again, even if you're just looking at the $6.5 million floor, that that is enough to find that this is a punitive measure. Okay. Well, I'm a little confused about your approach in this case. On the one hand, you say you're not arguing against that Maryland Supreme Court decision, but it looks like you are. Your Honor, we, of course, think that that decision was incorrectly decided, but we are not asking this panel to overturn that decision. But yet you are. You say it's weird and it's unexpected and it's surprising and it was almost certainly wrong as a matter of Maryland law, all of which I would say I've read Erie. I've reread Erie. I've reread Erie. None of that is in bounds for us, right? I don't think you should – you don't have to say anything about that decision at all. However – Which is bizarre considering that the entire first half of your opening brief seems devoted to convincing me that it was wrong. Well, what's important about understanding how much of an outlier that decision, that interpretation is, is that it goes directly to how the penalty was calculated. But that's a due – if that is a federal constitutional issue at all, that is a due process problem, not an excessive fines problem. Well, as Your Honors know, the excessive fines analysis is often conflated with the due process analysis. We think they're intertwined in this case. There are a number of cases that we cite in our brief, including Fessenmayer and Maryland v. United Elections, Inc., where they view these as together. So I think you're right, Your Honor, that there is a due process question baked into the excessive fines analysis here. Which is yet another argument that you haven't made. Well, we've made the excessive fines argument. No, but you haven't made – there's these Supreme Court cases, mostly from the 60s, about, like, this interpretation or application of state law was so unpredictable and so out of left field that it violates the due process clause to impose it on me. But that is not an argument you've made, right? We have made that argument in this brief, Your Honor. That's one reason why we spend time on the MTSA, is we think it is completely out of left field. So you think you have preserved a lack of fair warning under the due process clause argument? We talk about fair notice in our briefs, Your Honor. We talk about how there was a lack of fair notice in this case. And we think we have preserved that argument. Okay. In other words, you are making a due process type argument? We're saying that the excessive fines analysis is interwoven with the due process analysis. We think you can look at either one, and courts have done that. Courts have looked at both together or they've looked at either one. Let's take it apart. What's the due process argument? The due process argument is the one that Judge Hayden was just talking about, which is did we have fair notice in this case of a change in interpretation? And there's many cases in which the courts have found that if a regulatee does not have fair notice of a change in interpretation, that's pretty substantial, that a regulatee should not be held to the penalties that flow from that change in interpretation. So let's talk about the Eighth Amendment. What case says that the novelty of the state court's decision is relevant to the Eighth Amendment excessive fines inquiry? There's a case called United States v. Hext, which I believe we cite in one of our briefs, in which the court found that the new interpretation of an EPA regulation was sufficiently new and not notice to the regulatee that it did not have to pay the penalties. Could you say the name of that case again? Hext-Selanese Corporation. Hext-Selanese Corporation. That's one case. Did I answer your question, Your Honor? Well, I was asking what case. If that's the best case, I'll take a look at that case.  Great. Thank you, Your Honor. But I think it's worth emphasizing that contrary to what Epley will have you believe, this is not a re-litigation of that judgment. It is an independent federal constitutional challenge to agency action. And the constitutional claims here were not and could not have been raised in state court. Neither claim became apparent until months after the state proceedings concluded. Why is that, again? Well, for one of them, for the excessive fine, the fine amount was not being determined until after the state proceedings ended. And for the other, Jarchese, that decision was issued after the state proceedings concluded. Can I ask you that again? I referenced criminal defendants earlier. Criminal defendants are constantly held to have forfeited issues that are based on decisions that haven't issued at the time of their trial because we're like, yeah, you're right. The decision that says you're right hadn't issued, but there was nothing to prevent you from making the argument. And we literally constantly say criminal defendants. And they're like, how was I supposed to make an Apprendi argument before Apprendi? We're like, yeah, well, I guess, but you were required to make an Apprendi argument before Apprendi. We do this to criminal defendants, all that. So I don't know how you can say Jarchese hadn't been decided yet, so we never possibly could have thought to say we had a Seventh Amendment jury trial right. You could have absolutely said it. Well, actually, Your Honor, I disagree. I respectfully disagree. No, no. You would have lost. But saying that you would have lost is not saying you couldn't have said it. But we had no good faith basis to raise that argument, Your Honor. Sure you did. I don't think so, Your Honor. The Maryland Code violates the Seventh Amendment. That's the argument you're making now. The fact that the Maryland Code says you don't have a jury trial right has nothing to do with whether the Maryland Constitution gives you a jury trial right. People say that things that are authorized by the U.S. Code or the Federals of Civil Procedure violate the federal constitution literally all the time. I don't think it's a reasonable expectation for us to have to raise that argument in a situation in which the Code was clear that we had no jury trial right. So you definitely get treated then way better than every criminal defendant? I can't compare this to a criminal context. If a criminal defendant believes that the statute he's charged with violating is unconstitutional, he darn better raise that argument. He can't just wait for the Supreme Court to decide the case that says he's right. What I'm saying, Your Honor, is that up until Jarchese, we were of the view that we were obliged to follow a process that had no jury trial right. It was only after Jarchese was decided that it was clarified. How on earth does Jarchese change anything for you? Did it incorporate the 7th Amendment against the states? It did not incorporate the 7th Amendment against the states. And did it change Maryland law? Isn't there a Maryland Supreme Court decision saying that Article 23 doesn't apply to administrative proceedings? Which case is that, Your Honor? Consumer Protection Division v. Morgan, 2005. We would say that the cases that are more important are Attorney General v. Johnson and cases that flow from that. But, like, why on earth would we think that we're in a position to change Maryland law when the Maryland Supreme Court has said otherwise? The Maryland Supreme Court has said that the state right to a jury and the federal right to a jury come from the same common law source and have the same scope. Wait, where does it say the second of those things? Say that again? Where did it say the second of those things? I see cases where they say it's the Maryland right like the 7th Amendment, but where does this common law scope equivalent to, where has the Maryland Supreme Court said that? The Maryland Supreme Court has said in Attorney General v. Johnson that the 7th Amendment should not be obstructed and the enjoyment of the right should not be obstructed and that the ultimate determination of the issues affected by jury should not be interfered with. It talks about scope in that way. And subsequent courts, including Franklin v. Mazda Motor Corporation, say that the scope of the state right is identical to the scope of the federal right. So what is your best?  Does the Maryland Supreme Court ever said that last thing you just said? They never said those words. Identical? The same as? Equivalent with? Coextensive with? Anything like that? They've said words very similar to that. They've said that the Maryland Constitution Article 23, like the 7th Amendment to the Constitution of the United States, requires, and then they go and talk about the scope of the right. That's like saying, that's, wait, but that's like saying a motorcycle, like a bicycle, has two wheels. That isn't saying a motorcycle is a bicycle. It's not saying that. But I also don't think that it's required to make an affirmative statement in this way. And, in fact, just this past fall, Justice Gorsuch, in his opinion-denying cert in Thomas v. Humboldt County, talked about how surprised he was that the 7th Amendment has not been incorporated yet. And I think it's. . . I'm sort of surprised that he's surprised. This feels like a pretty open and notorious issue for quite a while now. Well, I think, Your Honor, the point is, there are no magic words here. The Maryland Supreme Court does not need to say the words in peri materia for it to view federal rulings on the scope of the jury trial right. So, if we're diving deep into what the Maryland Supreme Court has said, can I ask you a case about a case that you don't really deal with, which is Purnell? Why isn't that basically this case? As in, at the time, under Maryland law, you didn't think you had a jury trial right. Then something happened to make you think you had a jury trial right. Then the person says, oh, I should have had a jury trial. And the Supreme Court of Maryland says, no, that's 100 percent waived under Maryland law. The time to demand a jury trial was when we were going to have a non-jury trial, and the fact that you didn't demand one at the time means gone, gone, gone. I don't understand how that case is any different than this case. Well, in that case, there wasn't no Supreme Court decision that clarified the scope of the right. Isn't that right, Your Honor? Right, but that's not what they relied on. What they relied on was simply saying you should have raised this at the time. The fact that you think you had a good reason to raise it at the time is irrelevant. It's waived now. I understand. Again, it's our position that we had no ability to raise it at the time. I'm sorry. A bring, I think, is the case I'm talking about, where there was the Purnell argument, right? Oh, yes. Okay. I'm sorry. I'm sorry. No, no, it's okay. I understand. I see the parallels, Your Honor, but I think that this case is different. I don't see the parallels. I think that case is literally this case. And I'm asking you, if we were to write an opinion saying this case is not that case because, what do I write after the words because? This case is not that case because the Supreme Court has changed the law in the administrative state. It's been about administrative adjudicatory proceeding. And that's a different situation than what was in that case. But, Your Honor, you don't even need to reach the jury trial issue. If you feel like, as we heard in the prior arguments, that this is an area of law that's too undecided and you're waiting for more guidance from the Supreme Court, you don't need to decide that issue. You can easily reverse on the Eighth Amendment issue alone. But it is our position that The amount of the fine keyed to the amount that customers paid that they wouldn't have paid but for the fraud, isn't that what the amount of the fine is set as? Yes, and we find that to be troubling. So it's like a one-to-one ratio. I don't know the exact ratio of the customer to the fine amount. But what I do know is But that's the ballpark, right? It's in the ballpark of one-to-one. It's in the ballpark. Well below the statutory maximum. It's below the statutory maximum, but it's So what's your best precedent for that being excessive? It's certainly not the case, Your Honor, that just because a statute sets a maximum, that any action by an agency after that can reach that maximum. That takes away the entire constitution. Right, but the court has told us to be highly deferential to what the legislature has done, right? So it's below the max, and it's following a one-to-one ratio of harm to penalty. So what is your best case for that being excessive? We have not demonstrated that the commission has not demonstrated harm here, Your Honor. The commission has But that's old news. We can't disrupt that. The state court's decided the harm and all that, and we can't get into the facts. We're looking at the fine. You told us you're not asking us to relitigate the facts that were decided in state court. If you're looking at the fine amount, we think it's excessive based on the gravity of the offense, based on the fact that our client thought it was following the law at the time and told us no interpretation, based on past precedent of the commission in which the maximum fine had been $561,000. Can I ask you that? But those folks all settled, right? Not all of them settled. I think two of them did settle. Right, but you would agree that in the same way, like I'm thinking now when we do criminal sentencing, like defendants constantly say the person who pleaded guilty got a way lower sentence. We're like, right, and the difference between you and them is they pleaded guilty and you didn't, and so here I would say, so I don't know why we would possibly consider it remotely relevant the amount that people who settled had to pay because I think on the same theory of like, yeah, those people settled, and when you settle, you get a discount. So the Eighth Amendment, you know what I'm saying? What is your precedent for the proposition that the Eighth Amendment thinks we compare cases where people settled to those where people didn't? Okay, well, even if we look at cases where they didn't settle, smart energy is an example. Smart energy is the highest penalty in the record before you. You've seen the chart at Joint Appendix 22. That is a case that did not settle, and in that case where we're talking about far more egregious conduct, the civil penalty was far, far, far lower. I mean, again, we're comparing $561,000 to nearly $16 million, of which our client is required to pay a minimum of $6.5 million, potentially none of which going to customers. So it's just a very different situation. And there are plenty of other cases in the chart that you can look at, Your Honor. We actually make that distinction for your benefit to see which ones are settlements versus which ones are not. I think I'm over the time, Your Honor, so I will step down. Thank you. We'll hear from Mr. Glenn. May it please the Court. My name is Colin Glenn on behalf of the Maryland Public Service Commission. The Public Service Commission regulates public utilities and also retail suppliers in Maryland, among other things. In this case, smart energy's central goal in this litigation is to overturn a final judgment that went through both the commission's administrative court as well as three levels of the Maryland state courts and concluded finally and irrevocably that they committed extensive violations of the Maryland Consumer Protection Laws and that a refund of the amount specified in the briefs explained, a refund was the appropriate remedy. And based on everything you just said, I would assume the next word's out of your mouth, and so this is all claim precluded. But yet you don't argue claim preclusion. Am I right about that? I have not argued that in this case. Because what you just described to me sounds like claim preclusion. I have not argued that in this case. But nonetheless, we are here on the briefs that we have filed, and on those briefs, we have argued a jury trial. There is no jury trial right that was violated. We have argued that there was no excessive fine. And we have argued that the facts that were litigated in those cases are final. And so now once we're outside of claim preclusion land, you agree the Maryland courts did not decide the following questions. Whether the commission violated Article 23, whether the commission violated Article 25, whether the commission violated the Eighth Amendment, did the Maryland state courts decide any of those questions? No, they did not. So there would be no basis of applying issue preclusion to any of those questions? As it relates to those courts did not decide those questions, no. Nonetheless, those courts did decide the facts, and they did decide the challenges to the application of the MTSA that Smart Energy argues extensively. And those courts were never also tasked with the question of whether there should be a jury claim, a jury trial that never came up at any time under Maryland law, that right was waived under the Maryland rules. Although Smart Energy identifies several cases, for example, Majin, Ellerbee, and Smith, none of those cases relate to the sort of issue we have here. Majin concerns a party that couldn't raise an issue. They certainly could have raised that here. So are you abandoning your Ricker-Feldman argument, the fact that you're emphasizing that these were never brought up in state court? I am not. It sounds to me like you're admitting that this is certainly not an appeal from a state court deciding something. I am not abandoning that argument only on the issue of state preclusion.  In terms of what Ricker-Feldman means, if their case is to say throw out the Maryland state court decision and throw out the issues that were. Well, they tell us that's not. They have a footnote 8 in their brief that says we're not asking you to overturn the state court. They do say that. I don't. But you argue that this entire appeal. My argument is that's what they're doing. Your brief says this entire appeal, the court lacks jurisdiction because of Ricker-Feldman over the 8th Amendment arguments, the 7th Amendment arguments.  I don't follow that. I mean, because those arguments, I mean, yes, they could have been raised in that case. No argument was ever raised by them about any of those issues. So how does that make them a state court loser on those arguments? Well, they were a state court loser on the facts of this case. That's a great preclusion argument. Might have been.  But. I don't want to sidetrack to you. I just thought maybe you were about to narrow your case, but you're not, and that's okay. We'll roll on Ricker-Feldman, and then you get to the merits. Thank you, Judge. Can you focus on the refund or whatever it was a bit? Sure. How many customers and how does that compare? Give us some idea of how big or how little that fine is. Sure. So if we turn to the excessive fines question, in this case we had 34 customers originally complained to the commission, letting the commission know, yes, this was a problem. An investigation was then undertaken. A lot of discovery happened. There's an enormous record on this. It's not really in this record. But ultimately findings were determined that all of Smart Energy's 32,000 customers were affected by the wrongdoing that occurred. There were pervasive violations, both as to the Maryland Telephone Communications Act, Maryland Telephone Solicitations Act, and also a variety of other concerns in terms of the way that sales calls were conducted, the way they were supervised, the way that scripts were made, that there were misleading deceptive statements as a pattern in practice of what they were doing. So you say this is a system-wide thing? That's what the Maryland Commission found, and those were the facts that the Maryland courts affirmed. And based on that finding, the commission ordered initially, before it even went to court, the commission said, yes, we have a statutory authorization to order refunds, and the Maryland Consumer Protection Act says these contracts are null and void. They are not enforceable, and therefore the commission said we will authorize, we will order the refund, which is the way we do it typically and which is exactly what happened here, is they said you pay, you give them back the money that they were overcharged had they not entered into that contract. So not the every dollar that they received, but the money that they overpaid by this inducement in violation of consumer protection law to then take that contract, which was found to be null and void. And so what we have in terms of the remedy is exactly a one-to-one relationship between the amount of economic injury that these customers suffered and the amount of refund that they were ordered to pay, that Smart Energy was ordered to pay to them. Now, there's secondarily, there is a civil penalty amount that was ordered of $250,000. That didn't happen until after this case was filed, but I'm not sure how much they're really arguing about that. That was less than the amount they proposed originally, but that's beside the point. But the $15.97 million were numbers that Smart Energy came up with and said, and it was audited, but they produced those numbers and said we have overcharged by $15.97 million. If you compare what they would have paid before and you say, well, how much more did we charge them? $15.97 million. And the commission said, well, that's the amount. You've told us that's the amount. Give that money back to them because all of those contracts were null and void and you can't have overcharged them. That is the standard remedy that the statute authorized. That is the same remedy that those customers could have got if jurisdictionally, because the commission has the primary jurisdiction over this sort of claim. You have to bring that claim before the commission in terms of a violation of commission regulations. But if they had brought that in a court and it was jurisdictionally permitted, they could have gotten the same remedy out of a court. They could have filed a class action. They could have filed individual actions and gotten the same remedy. And what we have in front of the commission is a proceeding that looked really mostly like that. Now, procedurally it's a little different, but you had a body of potential claimants. You had a bunch of named claimants. And then you had the government in the form of two different agencies standing in as effectively class counsel and saying we're going to prosecute this case on behalf of these plaintiffs because they're entitled to this remedy. But for most of them it's not that much money. So they're not going to bring all these cases. But on net, 32,000 customers, it's a lot of money. And it does matter to them. They're entitled to it. So that is what we got, and that leads to the question of is this remedial? Now, my argument is yes. It is remedial. We have some cases that they have tried to distinguish in terms of who's arguing, is the commission, the agent responsible for this. But all of that gets away from the fact that these customers, they could have got this remedy from any other court. It just happened by jurisdictional happenstance that this is where they came. But, you know, the commission functions as, in this case, it was sent to an administrative law judge. The commission functions in a court. And that shouldn't change the analysis of whether or not the remedy is remedial. Like who brought the case, who agreed to prosecute it, anyone could have represented that class. It just happened that this was who it was. If we assume that the Eighth Amendment applies, do you still prevail? Yes. Even if it's not remedial, even if there was, you know, some punitive aspect to it, because of the proportionality, the Eighth Amendment requires grossly disproportionate as the standard. In this case, we have a number of cases cited in the briefs, but also just this is a one-to-one comparison. We know exactly how much economic injury there was. We know exactly because they told us Smart Energy just produced that information. And that's not even contested. We know exactly, you know, who these customers were. And we said, yes, go forth and pay them back the money that they got. And, you know, they have argued that there are questions about the structure of the remedy, in terms of what happens to unclaimed amounts. None of that was originally in this case, but they raised it on this appeal. Our argument is that's just not a fair perspective on the fact that this is still damages owed to these customers. And the fact that some of them, maybe they're dead, maybe they've moved away, that shouldn't be a windfall to Smart Energy, that they should then just say, oh, well, give it back to us. That's fantastic. You know, the state has a standard role in terms of allocating abandoned property, dealing with estates. Whatever reason those customers weren't able to show up, that shouldn't transform this one-to-one economic injury remedy, whether it's remedial or not. That shouldn't transform that into a disproportionate result. The state is not trying to take that money for itself. There's questions about exactly, you know, who should end up with that money. This was the proposal they had, and this is what the commission chose to agree with. Now, I will say, you know, they've got some arguments about, you know, comparative proportionality when we talk about the other cases that might exist in here. Now, the district court did look at what the other cases that were listed in the complaint. There are a handful of them. There's not a lot of facts about those cases in the complaint. And when you look at the district court's opinion, they looked at it and they said, we don't think there's a lot here. There's not an extensive comparative analysis. I'm not exactly sure what Smart Energy wants out of that other than presumably to go to discovery and produce enormous amounts of records on every other case and then fight about whether this case was like this other case was like this other case. But right now, what this court had below, they didn't have a lot. And our position is Smart Energy is not entitled to any more comparative proportionality analysis than what they got. Like, the court's allowed to do that analysis. I'm not arguing they're not allowed. But they don't have a right to say this was error, the way the court handled it below. And if you look at those other cases, they're all their own individual facts. And if you look at the cases that Smart Energy cites about proportionality, a bunch of those cases all say, yeah, comparative proportionality is really hard. And they go through the cases that are compared in those cases and they all say, yeah, none of these cases have anything to do with this case. Maybe kind of we'll think about them because it's really hard. And that's, you know, even on, like, better facts, more clear facts than what we have here where the complaint doesn't say much about. I'm not so sure you thought about this coming in, but let's assume we uphold your position on the Eighth Amendment. Is there a process by which the energy company can go back to the commission and solve those problems whether or not it's going to be a treatment to the state or whatever the administrative problem about this judgment is? Is there an ability for them to go back? When you say an ability for them to go back, like, right now I can say, although this occurred prior to this appeal, right now there is an open question still at the commission about exactly which other energy assistance entities will receive the unclaimed amounts and exactly what the amount of unclaimed amounts is. That's not been finalized because they've been making refunds for the past, like, eight months or so, something like that. And so there is ongoing, you know, negotiations through public hearings about exactly how to handle that money and to make sure that it is properly distributed. Does that answer your question? Yeah, I'm just trying to figure out if we answer the Eighth Amendment question, you'll say, well, there's that pot of money. You have mentioned, and I suppose they've argued, that there are some administrative problems about it. I'm just curious if the amount stays in place based on our ruling, what do you do with these nitpicking problems? And you've answered the question. All right. So, yes. I think, hmm, I don't know what else I want to say. I will just also add we didn't really talk about it, but on the jury trial issue, I think it's very clear that Maryland has not tied the Seventh Amendment and the Maryland jury trial rights together. They are not a motorcycle and a bicycle. They are, you know, if you have two dogs and they're very alike and one of them dies, the other is still alive, maybe. If something happens in the Seventh Amendment, it doesn't change the Maryland jury trial rights. They could have argued in Maryland court that it should have, but they didn't. And, like, until Maryland Supreme Court decides otherwise, there is very clear case law. There was no jury trial violation here because there's no jury trial right. And so it is simply not for this court to, you know, reverse on that point at all. And I don't have anything else unless the court has any further questions. All right. Thank you. Thank you very much, Your Honors. I ask that you please affirm the judgment of the district court. Mr. Reckman, you have some time on rebuttal. Thank you, Your Honors. Just a few points to clarify what was just said by the commission. First, Judge Floyd, you asked about the record in this case that led to the fine here, and it was talked about as if they found 32,000 instances of harm. That's not what they found. All that they found was that 32,000 customers called Smart Energy and chose to enroll. And on the basis of that alone, they reach the 32,000 number because that brings it within the MTSA. So that's how they get to the starting figure. They extraculate 32,000 from 34 complaints based purely on the fact that they called in. Something that we were told three times in writing was not something that would subject us to the MTSA. So I just wanted to make sure that you all were aware of that part of the record. The other thing that was mentioned that flows from that is what is the economic injury here? And the commission said that what happened in the record in this case is that Smart Energy calculated how much we had overcharged and we reached the $15.97 million figure. That is not at all what happened. We were told to calculate what is the difference between what customers would pay with standard offer service and what they would pay with Smart Energy service. That's the number that we reached, but that says nothing about whether or not the customer wanted to be paying those rates. Plenty of people make choices about their energy and about their vehicles and other things based on whether they want to be using renewable energy. And it is entirely possible that for many of these customers, they are happy customers. They may be paying a little bit more here and there, but they wanted to have renewable energy. That was a commitment that they wanted to make. So it's not enough to say that by the fact that we calculated as we were instructed to reach that figure, that that is the figure of damages. That has not been demonstrated here. The other thing I want to mention is about comparative proportionality. The commission said that it's hard to do. It's really not hard to do in this case. We have plenty of other cases before the commission, many involving the MPSA, but many involving the other allegations as well. And in those cases, we can see that there was far less of a penalty imposed. So I've asked the people who helped me do such things to look into this. It appears, at least according to what I'm told, is that in your briefs, the only other cases you talk about are where people settled. So we're introducing new facts in support of your argument here today at Oral Argument? No, we talk about other cases. Again, it's in the joint appendix starting at page 24. Whoa, whoa, whoa. It is not my job to read through the entire joint appendix and see if there's anything good for you in the JA. Absolutely. We do talk about smart energy in our brief, and we also talk about the fact that there's a long history here. We do the analysis in our briefs about the history of what types of cases led to what types of resolutions. So we do talk about all those past cases. And also, it really bears mention that we are here today as a company that has already been complying with the penalty. We are many months into complying with the penalty. As of today, we have paid nearly $3 million in refund checks. So we're not saying that this is all hypothetical. We are in the middle of this right now, dealing with this penalty that, again, we believe is based on a novel reading of the MTSA. I also want to just talk about the proportionality analysis in relation to Newell, which came up again in the other argument. Newell, again, establishes a statutory maxima, but that case did not establish what the proportionality analysis is, and we think it's incumbent on the district court to perform the proportionality analysis. We also think that you have the facts before you to do that analysis yourselves. And so, again, we just want to emphasize that because there is potentially a statute that has a certain fine maximum listed, that doesn't mean that that is the fine that is appropriate. Not at all. The inquiry does not end there. Those were the main points I wanted to make in my replies. Are there other questions? And just to reiterate, again, there are three ways in which the fine here is excessive and punitive. One is that there's a floor, a $6.5 million floor, where potentially all the money could go not to smart energy customers. Two is the way in which it can be redirected. Three is which the record is replete of examples in which the commission said it wanted it to be punitive, including the fact that we still have an additional $9.4 million hanging over our head. So, unfortunately, that does raise a question for me. Why does it matter what the staff say if the staff aren't the adjudicators? Your briefs just sort of assert, like, I mean, let's just assume for purposes of this question that I'm accepting your premise that staff members said things like that. Why does what enforcement staff said bear on what the intent of the sort of adjudicatory body that imposed the penalty is? Well, when you're evaluating a fine, you want to look at what aspects are punitive. And one way to find out if a fine is punitive is the rationale that's provided by the body. But the staff isn't the body. The body is the body that issues the fine. Absolutely. But the body that issues the fine mentioned the staff's opinions in its order. But sure. But that's the analogy I'm trying to think about is, like, whether something is punitive for purposes of the Due Process Clause and thus has to be punitive damages and subject to State farm. I wouldn't ask what the plaintiff's goal is in this lawsuit. I wouldn't ask what the plaintiff thinks. Plaintiffs constantly say they want compensatory damages to send a message to the defendants and show people that they can't do this. And that sounds punitive, but we don't normally ask what does the plaintiff want. Well, what we have in the commission order itself is language about the punitive nature of this penalty. In addition, we have language in the district court opinion in which it talks about the penalty as disgorgement, which has been established in other cases as punitive and not just wholly remedial. So I think those things do matter to the assessment of whether it's an excessive fine. And like I said earlier, the court can resolve the 8th Amendment issue today. The record is complete from our perspective. And the commission imposed a minimum $605 million fine regardless of how much reaches customers, as we've said. And so we think this court can rule on that issue, and we hope it does. Thank you. Great. Thank you. Thanks so much. We appreciate counsel's argument. We'll come down and greet you. But first, our courtroom deputy will adjourn court for the morning. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Allison J. Rushing, Toby J. Heytens, Henry F. Floyd